**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

WILLIE J. ROGERS,                              )    CASE NO. 16-cv-01992
                                               )
            Petitioner,                        )    JUDGE JEFFREY J. HELMICK
                                               )
        v.                                     )    MAGISTRATE JUDGE DAVID A. RUIZ
                                               )
LASHANN EPPINGER, Warden,                      )
                                               )    **REPORT AND RECOMMENDATION**
            Respondent.                        )

Petitioner, Willie J. Rogers[1] (hereinafter "Petitioner" or "Rogers"), challenges the

constitutionality of his extradition and continued confinement stemming from an underlying

conviction in the case of *State v. Rogers*, Cuyahoga County Court of Common Pleas Case No.

CR-176974. Petitioner, *pro se*, filed the instant Petition for a Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 on August 10, 2016. (R. 1). On January 6, 2017, Warden Lashann Eppinger

("Respondent") filed his Answer/Return of Writ. (R. 16). Petitioner filed a Traverse on February

6, 2017 (R. 19), to which Respondent did not file a reply. This matter is before the undersigned

Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is

---

[1] The Petition indicates that Petitioner's legal name is Otis Lee Rodgers. (R. 1, PageID# 1).

recommended that the habeas petition be DISMISSED as procedurally defaulted.

## I.   Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Eighth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> On September 22, 1982, two persons independently responded to the following advertisement in the classified section of the newspaper: "Receptionist, over 18, for body shop, no typing, will train, 721-4418." After doing so, a similar chain of events occurred with both individuals.
>
> [Victim 1] answered the ad by phone about 10:00 a.m. and spoke with appellant Pamela Green. Pamela drove to Lyndhurst to pick up [Victim 1] to take her to the interview. When they arrived at 9418 Buckeye Road, Pamela introduced [Victim 1] to Jovan, appellant Wendy Rodgers' four-year-old son, and then later told Jovan to stay in his bedroom. Pamela introduced [Victim 1] to appellant Otis Rodgers.
>
> Otis interviewed [Victim 1], and then Otis, Pamela and [Victim 1] smoked some marijuana. After meeting Wendy Rodgers, Otis began kissing [Victim 1] after Wendy returned to her bedroom, but [Victim 1] pushed him away. He then took [Victim 1] by the hand into Jovan's bedroom and told Jovan to leave. Otis pulled [Victim 1] onto the bed, pulled her sweater off, unhooked her bra and fondled her. [Victim 1] was afraid and told Otis she had her menstrual period. Otis then laid her on the bed, put his knees on her arms, and ejaculated on [Victim 1]'s bare chest.
>
> For her own safety, [Victim 1] told Otis she would think about the job and let him know the next day whether she wanted it. She tried calling her boyfriend for a ride home, but there was no answer. Otis then drove [Victim 1] home.
>
> Later that day at around 2:00 p.m., [Victim 2] responded to the newspaper ad. She was told that the receptionist job had been filled, but that a babysitting job was available. Pamela drove to [Victim 2]'s house in Fairview Park to pick up [Victim 2] to take her to the job interview. When they arrived at 9418 Buckeye Road,

Pamela introduced [Victim 2] to Jovan. Later, [Victim 2] met Wendy.

After some brief conversation with Wendy, [Victim 2] met Otis. When Otis left the room, [Victim 2] asked to be taken home. Pamela said they would have to wait for the car which allegedly was being repaired. [Victim 2] tried to phone a friend for a ride home, but the line was busy each time she tried.

While the appellants were in the bathroom engaged in bathtub sex, the phone was ringing. Appellants asked [Victim 2] to answer the phone and record the name and race of the person phoning if in response to the newspaper ad. [Victim 2] took several messages.

When the appellants came out of the bathroom, [Victim 2] again asked to use the phone to try to find a ride home. Otis grabbed the phone, put his leg over it, and started laughing. Pamela said she would take [Victim 2] home after she finished curling Otis's hair, but she did not.

Instead, Otis talked to [Victim 2] about becoming a call girl. [Victim 2] was unresponsive, and Otis became aggravated. Wendy and Otis then took [Victim 2] by her arms and threw her into the bedroom. They said it was time for her initiation. Otis attempted to talk [Victim 2] into having sex with him. He showed her nude photographs and he pulled her close to him and touched her. [Victim 2] tried to leave the bedroom at that point but she could not open the bedroom door.

Otis said he was sick of [Victim 2]'s excuses. He called Wendy into the bedroom to show [Victim 2] what would happen to her if she did not acquiesce in his demands. Wendy took a gun out of her purse, told [Victim 2] she would be shot, laughed, and threw the gun to Otis. Otis waved the gun at [Victim 2] and told her there was no way she could get out of having sex with him.

[Victim 2] continued trying to talk her way out. Otis again said he was sick of her excuses. At that point, Pamela and Wendy came into the bedroom, held [Victim 2] down on the bed and began undressing her. Otis undressed and got on top of [Victim 2] at which time [Victim 2] broke away. Otis masturbated and ejaculated on himself. Pamela and Wendy got up and said they had to get to work.

Otis asked [Victim 2] if she wanted to go to Dallas with them the next day at noon. [Victim 2] said they could call her and she would let them know. Otis then drove Pamela and Wendy to work and drove [Victim 2] home.

Appellant Wendy Rodgers testified and denied touching [Victim 2]. She stated she was sleeping since she worked in the evenings and she did not feel well. She knew that Otis and [Victim 2] were in the other bedroom with the door closed, but she said she trusted Otis. Wendy and Otis had been married two and one-half years. Wendy also testified that Pamela and [Victim 2] left to buy cigarettes and

3

returned. She denied the alleged bathtub sex and said that [Victim 2] was offered the job. Wendy did not know whether Otis touched [Victim 1].

On cross-examination Wendy testified that it was important to know the race of the persons calling for the job since she and Otis were an interracial couple which would be offensive to some people. She also testified that no traveling was necessary for the babysitting job, but it was necessary for the receptionist's job.

*State v. Rodgers*, No. 47146, 1984 WL 5516, at *1–2 (Ohio Ct. App. Apr. 19, 1984).[2]

## II. Procedural History

### A.   Conviction

On June 9, 1983, a jury found Rogers guilty of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01 as charged in counts one and two of the indictment, and guilty of gross sexual imposition ("GSI") in violation of O.R.C. § 2907.05 as charged in counts three, four and five of the indictment. (R. 16-1, Exh. 1, PageID# 167). The trial court sentenced Rogers to serve indefinite prison terms of 7 to 25 years for each kidnapping conviction, and 2 to 5 years in prison for each GSI conviction. *Id*. The trial court further ordered that all of the prison sentences were to be served consecutively, resulting in an aggregate sentence of 20 to 65 years in prison.[3]

*Id*.

### B.   Direct Appeal

Petitioner, through counsel, raised several assignments of error. *Rodgers*, 1984 WL 5516 at **2-8. The state appellate court affirmed Petitioner's convictions and consecutive sentences, but remanded the case to the trial court with an instruction to reduce the aggregate minimum

---

[2] The court has intentionally replaced the names of the victims in keeping with contemporary practice of not naming the victims of sexual assaults.

[3] Rogers pleaded guilty to a charge of child stealing in violation of O.R.C. § 2905.04 in a separate conviction and sentence of six months imprisonment to be served concurrently with the aforementioned sentences. (R. 16-1, Exh. 2, PageID# 168).

sentence to 15 years in prison.[4] *Id*. at *9.

## C. Parole, Subsequent Incarceration and Extradition

On June 14, 1992, Petitioner applied for parole pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. (R. 16-1, Exh. 6, PageID# 181).

On November 25, 1992, Petitioner was informed that he would be released into the custody of the Maricopa Country Arizona Sheriff's Department for confinement. (R. 16-1, Exh. 5, PageID# 179). Petitioner was informed that he was required to report to the Ohio Adult Parole Authority ("OAPA") 60 days prior to his tentative release date. *Id*. He was further informed that "following [his] release from the custody of the detaining authorities," he would placed under "active supervision" and continue on parole for no less than two years. (R. 16-1, Exh. 5, PageID# 179). He was to "immediately report [his] address to the [OAPA]." *Id*. Petitioner was expressly told that he would not be released from parole supervision until the State of Ohio granted him a "final release." *Id*. The Maricopa County Sheriff's Department took custody of Petitioner on December 2, 1992. (R. 16-1, Exh. 9, PageID# 221). Finally, Petitioner was instructed to "[o]bey all municipal ordinances [and] state and federal laws…." (R. 16-1, Exh. 5, PageID# 180).

Petitioner was released from prison in Arizona in February of 1997.[5] (R. 16-1, PageID# 234). There is no evidence that he reported to the OAPA as required or contacted Ron Balderrama of the North Long Beach Parole Unit. (R. 16-1, Exh. 6, PageID# 182).

On June 27, 2003, Petitioner was convicted of assault with a deadly weapon, a felon in

---

[4] On July 12, 1984, the trial court modified Petitioner's sentence as directed by the state appellate court. (R. 16-1, Exh. 4, PageID# 177).

[5] Other records indicate that petitioner was released from prison in Arizona in May of 1998. (R. 16-1, Exh. 27, PageID# 364).

possession of a firearm, a prohibited person in possession of a firearm/ammunition, and making criminal threats in California state court. (R. 16-1, PageID# 223, 362). The date of the offenses was July 15, 2001. *Id*.

On July 12, 2013, the OAPA issued a warrant to detain Petitioner, and lodged the detainer with the California Department of Corrections and Rehabilitation. (R. 16-1, Exhs 8 & 9, PageID# 185-186). Petitioner was returned to Ohio to the Lorain Correctional Institution on July 30, 2015. (R. 16-1, Exh. 24, PageID# 343).

**D.   Previous Federal Habeas Petitions and Federal Actions**

Prior to his actual extradition, on June 8, 2014, Rogers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the United States District Court for the Southern District of Ohio.[6] (R. 16-1, Exh. 9, PageID# 187-201). Rogers asserted one ground for relief:

> **GROUND ONE**: The State of Ohio lacks due process parole jurisdictional "standing" over the Petitioner after 20+ dormant, silence years to lodge a parole violator's hold for purpose of reenslaving him in an Ohio prison.

> **Supporting Facts**: On 12-2-92 the Ohio Parole Board paroled Petitioner to his (5-23-84 dated detainer) consecutive Arizona 7½ year sentence. Petitioner left the Ohio prison in the custody of 2 Arizona detectives. Some 4½ years later he was paroled on 2-97 to serve a 13 months parole of which he did successfully. Petitioner contacted the Ohio Parole Interstate Compact Office inquiring as to the finality of his Ohio Parole nearly a dozen time – his contact there a white lady in her 40s didn't have a clue as to why he was calling but claim she'd note the call. Thereafter, some 20+ years later, Ohio lodged a 7-12-13 dated warrant alleging Petitioner is their parole violator – wanting to re-enslave him.

---

[6] Petitioner had initially filed his action in the United States District Court for the Central District of California asserting claims under 42 U.S.C. § 1983. The action was then transferred to the Eastern District of California, before finally being transferred to the Southern District of Ohio at Petitioner's request. That court dismissed Petitioner's claims for monetary damages pursuant to § 1983, but permitted the matter to proceed as an action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Rodgers v. Ohio*, No. 2:14-CV-00453, 2014 WL 7005130 at *1 (S.D. Ohio Dec. 10, 2014), *report and recommendation adopted*, 2015 WL 196431 (S.D. Ohio Jan. 15, 2015).

(R. 16-1, Exh. 9, PageID# 191).

Therein, Respondent filed a motion to dismiss arguing that Rogers's claims were unexhausted and, in any event, failed to state a cognizable claim for habeas relief. The Magistrate Judge recommended dismissing the action finding as follows:

> Without resolving the issue of exhaustion, this Court concludes that the Petition offers no basis for relief. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The record fails to support Petitioner's claim that his parole in Ohio expired prior to the issuance of the parole violator warrant. Under Ohio law, a parolee remains in the custody of the Ohio Department of Rehabilitation and Correction until the Ohio Adult Parole Authority grants the parolee "a final release." O.R.C. § 2967.02(C), (D). There is no evidence that Petitioner has ever been granted a final release from parole by Ohio. *See also Palmer v. Ghee*, 117 Ohio App.3d 189, 690 N.E.2d 73 (Ct.App.3d Dist.1997) (Ohio parole authority is not estopped by its failure to promptly pursue parolee who had not been granted a certificate of final release). In any event, the Ohio parole board is not required to pursue parole revocation proceedings while Petitioner remains in the custody of California pursuant to a new criminal conviction. Federal law requires only that a parole revocation hearing be held within a reasonable time after the state has secured custody of the parolee by executing the detainer and returning the parolee to the institution from which he was paroled. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the United States Supreme Court held that there is no constitutional duty to provide a parolee an adversary parole revocation hearing until he is taken into custody as a parole violator by execution of the warrant:

> > Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from [the convictions for which he is currently incarcerated]. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the [Parole] Board's intent to defer consideration of parole revocation to a later time.

> *Id.* at 86. *Accord Santiago-Fraticelli v. Thoms*, 221 F.3d 1336 (6th Cir.2000) (unpublished); *Myers v. Davenport*, 2:06-cv-247, 2006 WL 1705180 (S.D. Ohio June 16, 2006). In short, until Ohio's parole violator warrant is executed, Petitioner's constitutional right to a hearing has not vested. To the extent that Petitioner may intend to allege a violation of Ohio law, any such claim cannot form the basis for federal habeas corpus review. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).

*Rodgers*, 2014 WL 7005130 at **3-4.

On August 12, 2015, the District Court adopted the report and recommendation, finding as

follows:

> Petitioner argues that, because his parole was inactive while he was in the custody
> of Arizona, it cannot be reactivated without notice and a hearing that conforms to
> constitutional notions of due process. Petitioner also argues that he satisfied his 2
> year minimum term of parole while in custody in Arizona. He again denies, as he
> did before the Magistrate Judge, that he ever received parole instructions
> following his release from confinement in Arizona. However, these contentions
> miss the mark. Petitioner was sentenced in 1983 to an aggregate indeterminate
> term of imprisonment of up to 65 years, or until 2048. Under Ohio law, a parolee
> remains in the custody of the Ohio Department of Rehabilitation and Correction
> until the Ohio Adult Parole Authority grants the parolee "a final release." O.R.C.
> § 2967.02(C), (D). There is no evidence that Petitioner has ever been granted a
> final release from parole by Ohio. Moreover, Ohio is not required by the United
> States Constitution to pursue parole revocation proceedings so long as petitioner
> remains in his current custody of California. *See Moody v. Daggett*, 429 U.S. at
> 86; *Santiago-Fraticelli v. Thomas*, 221 F.3d 1336. To the extent that petitioner
> intends to assert a violation of state law or argue that the State of Ohio is
> estopped, by the passage of time, from pursuing its detainer, petitioner remains
> free to do so in connection with state parole revocation proceedings, whenever
> those proceedings are instituted.

*Rodgers v. Ohio*, No. 2:14-CV-453, 2015 WL 196431 at *3 (S.D. Ohio Jan. 15, 2015), c*ertificate

of appealability denied* (Aug. 12, 2015). Petitioner's subsequent motion for a rehearing was

denied *en banc* on December 30, 2015. (R. 16-1, Exh. 18, PageID# 331-332).

Meanwhile, on May 29, 2015, Petitioner filed a complaint seeking relief pursuant to 42

U.S.C. § 1983 along with a motion for a temporary restraining order in the United States District

Court for the Eastern District of California. *Rodgers v. Solano Cty. Courts*, No. 2:15-CV-1169,

2015 WL 3830191 at *1 (E.D. Cal. June 19, 2015). Rogers again challenged "the validity of a

warrant issued by, and his pending extradition to, the State of Ohio." *Id*. at *3. The District Court

ordered the matter transferred to the Southern District of Ohio. *Id*. at * 7.

8

On August 26, 2015, one week after his state parole revocation hearing, the magistrate judge issued a report and recommendation recommending that Rogers's claims under 42 U.S.C. § 1983 be dismissed for lack of subject matter jurisdiction and for failure to state a claim for relief; that Rogers's motions for injunctive relief be denied; and, that Rogers be required to file a petition for a writ of habeas corpus if he seeks to pursue a claim for habeas relief pursuant to 28 U.S.C. § 2241 or 28 U.S.C. § 2254. (R. 16-1, Exh. 19, PageID# 333-335).

On September 22, 2015, the District Court adopted the report and recommendation and ordered Rogers to file his habeas corpus petition, if he intended to pursue one, within 30 days or face dismissal for want of prosecution. (R. 16-1, Exh. 20, PageID# 336-337). Thereafter, the magistrate judge issued another report and recommendation on October 26, 2015, recommending dismissal for want of prosecution. (R. 16-1, Exh. 21, PageID# 338-339). The report and recommendation was adopted and the case dismissed with prejudice. (R. 16-1, Exh. 22, PageID#

**E.    Parole Violation Hearing**

On August 4, 2015, five days after Rogers's extradition to Ohio was completed, the OAPA issued a Notification of Release Violation Hearing, which set the date for Rogers's parole revocation hearing as August 19, 2015. (R. 16-1, Exhs. 24 & 25, PageID# 343-345). Rogers admitted, with mitigation, that he failed to keep the OAPA informed of his residence since May 22, 1998, and also admitted, with mitigation, that he was convicted of assault with a deadly weapon, felon in possession of a firearm, and making a criminal threat in California on or about July 30, 2003. *Id*. at PageID# 345-347. He denied failing to contact Gail Price, the Ohio Deputy Administrator as instructed in May of 1998 and denied failing to report to the California parole board as directed in May of 1998. *Id*. at PageID# 345.

On August 6, 2015, the OAPA notified Rogers that his request for four witnesses was

denied as one individual was not sufficiently identified, Gail Price was retired and unavailable, and two others were out of state witnesses. (R. 16-1, Exh. 25, PageID# 348-350).

Rogers was found guilty of failing to keep the OAPA informed of his residence since May 22, 2005 and guilty of three counts of failing to obey all state laws. (R. 16-1, Exhs. 25 & 28, PageID# 345-346, 365-366). The charge of failing to report to California parole as directed was dismissed by the OAPA. *Id*. He was found not guilty of failing to contact Gail Price. *Id*.

Based on the hearing decision, Petitioner's parole was revoked and it was ordered that he serve an additional 24 months in prison before again becoming eligible for parole. (R. 16-1 & R. 16-2, Exhs. 29 & 30, PageID# 367, 371).

On October 14, 2016, based on Petitioner's status as parole violator for 4380 days, his maximum release date was adjusted to March 4, 2060. (R. 16-2, Exh. 31, PageID# 372).

Petitioner was again considered for parole, but, on August 6, 2017, it was determined that he was not suitable for release based on "no positive growth," continued "criminal thinking errors," and minimization of his involvement in the offense. (R. 34-2).

**F.    State Post-Conviction Filings**

   **1. First State Habeas Petition**

On September 24, 2015, Rogers filed a petition for a writ of habeas corpus in the Lorain County Court of Common Pleas. (R. 16-2, Exh. 32, PageID# 373-75). Rogers generally alleged that the OAPA lacked the jurisdiction to extradite him and to revoke his parole, and did not allow him to present witnesses at his parole revocation hearing. *Id*.

Respondent moved for summary judgment on November 25, 2015. (R. 16-2, Exh. 33, PageID# 463-477). Rogers did not respond. (R. 16-2, Exh. 34, PageID# 518). The court granted Respondent's motion for summary judgment. *Id*.

Rogers filed an appeal with the Ninth District Court of Appeals. On March 18, 2016, the state appellate court dismissed the appeal finding that Roger's habeas petition failed to comply with the mandatory requirements of O.R.C. § 2969.25(C). (R. 16-2, Exh. 35, PageID# 524-525).

Rogers filed an appeal with the Supreme Court of Ohio. In his memorandum in support of jurisdiction, Rogers raised the following propositions of law:

1. Whether Governor John R. Kasich illegally and unlawfully extradited/kidnapped (by deception of perjurious-lies and fraud) Appellant a California parolee from California charging him in violation of the terms of some (non-supplied) 23 year old dated illegal hybrid release supervision terms? 42 U.S.C 1983

2. Whether the Ohio Parole Board by its 8-17-92 dated minute order grant of parole to Appellant under "special conditions" to (his consecutive Arizona prison sentence) detainer only; placing him outside of the territorial jurisdiction of Appellees and in operation of law waivered and stripped appellees of asserting its arbitrary, draconian, hideous, barbaric statutory O.R.C. 2967.02(C)(D) "custody" jurisdiction decades later?

3. Whether Appellees are estopped by the passage of time from pursuing/prosecuting an alleged release supervision violation; because in RICO conspiracy. Appellees, aliciously, vindictive and deliberately waited 12 and 17 years after their supposed 5-22-82 and 7-30-03 dated alleged release violation before they filed their 7-12-13 and 6-11-15 dated tolling state detainer warrant declaring Appellant a "parole violator" in the first instance and "release violator" in the second instance? RICO conspiracy.

4. Whether Appellees unlawfully, unconstitutionally without statutory jurisdiction did capture and extradite appellant from California. A California parolee to reenslave in an Ohio prison/slave plantation 23 years after his incustody parole departure on 12-2-92 to the state of Arizona on charges of violating the terms of some ancient dated release supervision terms.

5. Whether Appellant a black man is the "target' of diametric internal struggle/contradictive orders issued to him between the Ohio Parole Board versus the Ohio Adult Parole Authority. Appellant fully complied with the ancient orders of the former and failed (never having received a copy) to comply with the latter and now in the middle between the two unaccountable agencies?

6. Whether Ohio's Long-Arm Neo-Fugitive Slave Act 1793-1850, O.R.C. 2967.02(C) (D) law is unconstitutional, it violates the federal "liberty interest"

rights of a former decades past parolee prisoner; by reenslaveing Appellant 23 years after his 12-2-92 incustody parole departure to the State of Arizona; simply because Appellant having not received a "final release" of his sentence (Appellant is in his twilight-years will die in prison?

7. Whether denial of exculpatory <u>material</u> witnesses, I). Gail A. Pric, deputy administrator; II). Jane Doe, Interstate Compact Office. Morrissey v. Brewer, 408 U.S. 471 (1972) denied appellant his federal due process rights of a full and fair hearing?

(R. 16-2, Exh. 36, PageID# 526-549).[7]

On July 27, 2016, the Supreme Court of Ohio declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 16-2, Exh. 38, PageID# 564),

**2. Second State Habeas Petition**

On July 15, 2016, Rogers filed another petition for a writ of habeas corpus in the Supreme Court of Ohio. (R. 16-2, Exh. 39, PageID# 565-574).

On October 26, 2016, the Ohio Supreme Court *sua sponte* dismissed Rogers's petition after considering it in a manner prescribed by law. (R. 16-2, Exh. 40, PageID# 576).

**G.  Current Federal Habeas Petition**

On August 7, 2016, Petitioner filed the instant Petition for Writ of Habeas Corpus asserting the following grounds for relief:[8]

**GROUND ONE:** Unconstitutional extradiction in violation of both state and federal extradiction laws

**Supporting Facts**: Governor John R. Kasich unconstitutionally, unlawfully and illegally extrdictated (kidnapped by deception of perjurious-lies and fraud) Petitioner, a California parolee from California in the absence of any legitimate "probable

_____

[7] The Supreme Court of Ohio struck pages 16 through 21 of Rogers's memorandum in support of jurisdiction as exceeding the 15 page limitation, and therefore, did not consider the sixth or seventh propositions of law. (R. 16-2, Exh. 37, PageID# 563).

[8] Grammatical and spelling errors have not been corrected and Petitioner's grounds for relief are reproduced here verbatim.

cause" under the ruse of charging Petitioner in violation of some ancient unverified, uncertified decades+ past release supervision terms; not found as extradictable crimes under either state or federal extradiction laws.

**GROUND TWO:** Due process "waiver" of jurisdiction by operation of law, due to the grant of parole under "special condons" to the sovereign state of Arizona only!

**Supporting Facts:** Respondents waive, relinguished and 'forfeited' their statutory jurisdiction "custody" (O.R.C. 2967.02(C)(D)) over Petitioner after paroling him 23+ years ago under "special conditions" to his detainer (the sovereign state of Arizona only!; with no caveat of intentions/due process advisement of retention of custody; over Petitioner upon the completion of his Arizona sentence/parole obligation. whereupon Arizona doc cancelled its agreement with ohio on 12-11-92: and granted Petitioner a certificate of completion on or about 5-22-98.; other than petitioner dozen or so call to OAPA Interstate Compact Officer who very politely advised him "they" had nothing on him, that Arizona was responsible for him and that he need not call anymore. Petitioner heard absolutely nothing from Respondents until 2013.

**GROUND THREE:** Federal and state due process estoppel due to the prejudicial passage of time (15 years); witnesses unavailable or dead.

**Supporting Facts:** Respondents irreparably prejudiced Petitioner's defense and are in due process "estoppel by the prejudicial passage of time (15 years) of their criminal misconduct from pursuing/prosecuting a so-called ancient release supervision violation; because in RICO conspiracy, Respondents maliciously, vindictively, deliberately and inexcusably "waited" 15 and 10 years after their alleged 5-22-98 and 8-1-03 dated release supervision terms violation; even before filing their first state tolling (PAL) warrant detainer on 7-12-13 and also in criminal mischief back dated the violations to 8-1-03 on Petitioner's inmate status; on a 6-16-16 dated "memo" now charging Petitioner with 12 years of "lost days."

**GROUND FOUR:** Federal due process parolee "liberty interest" rights vs arbitrary denial of "final release" used as a means to circumvent a parolees "libert interest."

**Supporting Facts:** Petitioner has a constitutional "liberty interest" in his freedom once Ohio chose to grant said parole some 23 years ago and the mere fact that Respondents have for 20+ years in abandonment of Petitioner from his 12-2-92 dated incustody parole departure to the State of Arizona until 7-12-13 out of economical selfishness failed/refused to issue a "final release" (manumission papers); most assuredly is not the fault of responsibility of Petitioner; nor is it a violation of any purported release supervision terms subjecting Petitioner to extradiction, revocation and reenslavement 23 years later; Respondent Musser states that she was unaware of Petitions whereabout until 7-12-13; OAPA agent Donnel R. Jones at the release revocation hearing confessed that his agency lost Petitioner's file for the last twenty years. And of course "white people" in ameri-KKKA are held to zero accountability.

**GROUND FIVE:** Federal Due Process denial, sufficiency of evidence.

**Supporting Facts:** Respondent's have failed to produce a certified, verified placed, recorded, valid, legitimate, specific release supervision terms written nearly twenty-three years ago indicating that Petitioner signed, acknowledgement that "on or about 5-22-98 he'd keep Ohio Adult Parole Authority informed (of his) residence." And failing to do so would result in his extradition from California, Revocation and reenslave Ohio slave plantation/prison. Respondent's filed it's first state tolling (PAL) warrant detainer on 7-12-13, some 15 years after the so-called violation and then back dated the violation to 8-1-03 as reflected on Petitioner' inmate status record. Nothwithstand, this document even if it existed would have originated on or about 12-2-98; no document dated past five years pas has any force of law.

**GROUND SIX:** Federal Due Process denial; sufficiency of evidence.

**Supporting Facts:** Respondents have failed to produce a certified, verified placed, recorded, valid, legitimate, specific release supervision "terms" "actively" imposed upon Petitioner on or about 8-1-03 that he signed, acknowledging in agreeing upon said terms, written about 23 years ago, that would deem his 8-1-03 dated California conviction, an Ohio violation, subjecting him to extradition from California, revocation and reenslavement by Ohio on 7-30-15. Albeit, Respondents first state tolling (PAL) warrant detainer wasn't filed until 7-12-13, some 10 years after his California conviction. Notwithstanding, any so-called release supervision terms dated past five years has no force of law.

**GROUND SEVEN:** Federal Due Process denial, denial of witness, denial of witness confrontation at the revocation hearing.

**Supporting Facts:** Respondents denied Petitioner the right of witnesses at the release revocation hearing; his right of confrontation, to cross-examine; receive exculpatory testimony to allow, to afford Petitioner the right to develope and perfect his meritour testimony; Petitioner was irreparably prejudiced by this due process denial, he had no defense. Parole board hearing officer's excuse, inter alias, the principle, <u>material</u> witness retired, unavailable (or dead) one can imagine so after 23 years).

**GROUND EIGHT:** Federal Due Process denial; Petitioner has never been an "active" Ohio parolee/release with any if the accurement of same.

**Supporting Facts:** Respondent's ancient, former deputy administrator, Interstate Compact Officer, Gail A. Price, post-parole, nine-days prior to Petitioner's 12-2-92 dated in custody parole <u>under</u> "special conditions" to his <u>detainer</u> (sovereign state of Arizona) <u>only!</u>; in usurpation of the parole board's 8-17-92 dated minute order "deactivated" Petitioner's parole to some unspecified, futiristic date; and thus Petitioner has never been an "active" Ohio parolee/release subject to revocation/reenslavement 23 years thereafter; Petitioner's inmate status record reflects zero activity form 12-2-92 until 7-12-13; with no indication Petitioner's parole/release was ever reactivated.

**GROUND NINE:** <u>Federal due process denial</u> (resentence for the second time in in absttinia) without any notification or hearing and in; <u>double jeopardy:</u> twice punished based on the same fictious allegations.

**Supporting Facts:** Petitioner was arbitrarily sentenced/resentenced in double jeopardy; double punishment to an additional 12 years of slavery in absentia without any notification or hearing condemned to the whiteman"s for profit slave plantation – based on a nebulous charge of "lost days" without a shred of legitimate proof or otherwise of his "guilt" – by a low-level ODRC-BOSC Clerk named J. Hoffer delivered via a 6-16-16 dated memo. The additional 12 years added to Petitioner's maximum sentence increased his maximum expiration of sentence from 2048 to 2060; whereupon he will be one hundred and twelve years old before his release (emancipation from slavery). <u>Double jeopardy:</u> ten months prior to at Petitioner's 8-10-15 dated formal release revocation hearing, Petitioner was punished for the same exact fictitious allegations condemned to an additional two years of slavery before he is re-eligible, re-parole consideration ordered by the Parole Board Hearing Officer Marc. C. Hauk and subsequently approved by the ful board on 8-30-15.

Yet, ten months after the fact ODRC-BOSC-Employee Hoffer seek to acquire additional black gold, black slave dollar $$$$ to make their trailer payments, pickup truck payment and feed their billy goats

FYI: Prior to Petitioner's incustody parole departure under "Special Conditions" ONLY to the sovereign State of Arizona; Petitioner had served 9½ years of his sentence.

<u>White Racism:</u> While his equally charged, equally convicted and equally sentenced two white female codefendents won release after only serving 4 years. AKA Ku Klux Klan white racism. And the other white codefendants*

**GROUND TEN:** Federal due process <u>denial</u> of a parolee's right to adequate and proper "notification" of said Ohio "release supervision terms" by Respondents' gross estoppel-negligents of 20+ years of estoppel-silents from 12-2-92 until 7-12-13. Plainly put, Petitioner an Arizona parolee never had any "fair" warning or opportunity to know that he was an "active" Ohio release supervision releasee under terms.

**Supporting Facts**: On 7-12-13 Respondents out of nowhere Respondents filed its first state tolling (PAL) warrant detainer against Petitioner with the California Department of Corrections and Rehabilitation charging Petitioner as their Declared Parole Violator; obviously thinking better of that LIE; on 6-11-15 Respondents filed its second and amended state tolling (PAL) warrant detainer against Petitioner with the Solono County Sheriff's Department charging Petitioner as their Release Supervision Violator; on 6-18-15 Governor Kasich filed his arrest warrant against Petitioner with the Governor of California charging Petitioner as his fugitive and release supervision violator; on 8-4-15 Petitioner was charged in particular with release supervision violation on 5-22-98 and 7-30-03; at the 8-19-15 dated Release

Supervision Revocation Hearing, no ancient evidentiary documentation was
presented and no witnesses allowed; om 6-16-16 without any notification or hearing
Petitioner's estoppel 7-30-03 dated violation 6-11-15 dated declared a release
supervision violator was backdated to 7-30-03, now charging petitioner with 12 years
of "Lost Days", extending Petitioner's maximum expiration of sentence from 2048
until 2060.

(R. 1, PageID# 5-15).

### III. Second or Successive Petition

Respondent's Return of Writ asserts that the instant habeas petition constitutes a second or

successive petition. (R. 16, PageID# 145-147).

Pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of 1996, 28

U.S.C. § 2244:

(a) No circuit or district judge shall be required to entertain an application for a
writ of habeas corpus to inquire into the detention of a person pursuant to a
judgment of a court of the United States if it appears that the legality of such
detention has been determined by a judge or court of the United States on a prior
application for a writ of habeas corpus, except as provided in section 2255.

(b)(1) A claim presented in a second or successive habeas corpus application
under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under
section 2254 that was not presented in a prior application shall be dismissed
unless--

(A) the applicant shows that the claim relies on a new rule of constitutional
law, made retroactive to cases on collateral review by the Supreme Court,
that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered
previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the
evidence as a whole, would be sufficient to establish by clear and
convincing evidence that, but for constitutional error, no reasonable
factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed

in the district court, the applicant shall move in the appropriate court of appeals
for an order authorizing the district court to consider the application.

*See also In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006). However, "the Supreme Court has made

clear that not every numerically second petition is 'second or successive' for purposes of

AEDPA." *Bowen*, 436 F.3d at 704 (*citing Slack v. McDaniel*, 529 U.S. 473, 487 (2000)). "[A]

numerically second petition is 'second' when it raises a claim that could have been raised in the

first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect."

*Id.* (*citing McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).

Here, the petition contains claims that were raised or could have been raised in the first

habeas petition, as well as claims that were not raised in the first petition but could not have been

raised at that time. Although the petition contains ten grounds for relief, they often contain the

same or similar allegations and do not clearly delineate separate grounds for relief. However, it is

sufficient to observe that Rogers's first habeas petition was filed on June 8, 2014, and the bulk of

his grounds for relief challenge actions that pre-date the filing of the first petition and were, in

fact, arguably raised in the first petition. Rogers's first petition challenged Ohio's jurisdiction to

extradite him and generally challenged the allegedly dormant nature of his parole status. (R. 16-

1, Exh. 9, PageID# 191). These same arguments were weaved throughout Petitioner's currents

grounds for relief one through six, eight, and ten. (R. 1, PageID# 5-15). As noted *supra*, the

District Court considering Petitioner's first habeas petition denied his claims. That court

determined that there was no constitutional violation stemming from a failure to hold a hearing

prior to the State of Ohio taking him into custody, and that Rogers was a parolee in the State of

Ohio's custody until he obtained a final release.[9] These holdings were affirmed by the Sixth

---

[9] The District Court even found that there was "no evidence that Petitioner has ever been granted

Circuit Court of Appeals:

> Rodgers argues that his custody was relinquished to Arizona and may not be reactivated without notice and a hearing that conforms with due process. There is "no constitutional duty to provide [a] petitioner [with] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant." *Moody v. Daggett*, 429 U.S. 78, 89 (1976). The respondents have not taken custody of Rodgers. Thus, Rodgers has not shown that he is entitled to a hearing. And to the extent that Rodgers argues that he has successfully completed his two-year term of parole, the evidence shows that Rodgers was ordered to serve "not less than TWO YEAR/S" of parole, which could be extended or revoked until the expiration of his maximum sentence or until the state granted him a final release. Rodgers points to no evidence that he has been granted a final release. Thus, reasonable jurists could not disagree with the district court's rejection of this claim.

(R. 16-1, Exh. 16, PageID# 311). Pursuant to 28 U.S.C. § 2244(b)(1), claims presented in a second or successive habeas corpus application that were presented in a prior petition must be dismissed. Therefore, it is recommended that those grounds for relief encompassing these claims—specifically grounds one through six, eight, and portions of ground ten—be DISMISSED.

However, a number of Petitioner's current grounds for relief—grounds seven, nine and ten (and partially ground four)—allege a violation of Petitioner's minimum due process requirements with respect to his August 19, 2015, parole revocation hearing or with respect to the subsequent alteration of Petitioner's maximum final release date. This court finds the factual predicate for these claims arose *after* his first habeas petition was denied. Because these claims could not have been raised in the first petition, these claims are not second or successive. *See In re Jones*, 652 F.3d 603, 605-06 (6th Cir. 2010) ("limitations on second or successive petitions do not apply to a numerically second petition challenging a parole determination or disciplinary

---

a final release from parole by Ohio." *Rodgers*, 2015 WL 196431 at *3.

proceeding that occurred after the prisoner's initial petition was filed."). Therefore, the Sixth Circuit's authorization is not required to consider these later claims.[10]

### IV. Exhaustion and Procedural Default

#### A. Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:   "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

#### B. Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

---

[10] Respondent suggests that Roger's § 1983 action constituted a second habeas petition, because the District Court gave Rogers the opportunity to file a § 2254 petition after his § 1983 action was dismissed. (R. 16, PageID# 147). However, Rogers did not opt to convert his civil action into a habeas petition, and, therefore, the court declines to construe that action as a second habeas petition. Moreover, in footnote 5 of the Return of Writ, Respondent acknowledges that Rogers could not have raised claims related to alleged errors or deficiencies stemming from the August 19, 2015 hearing in his prior petitions. (R. 16, PageID# 148-149).

to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence

21

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See, e.g.,* *United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent asserts that all of Petitioner's grounds for relief are procedurally defaulted. As set forth in the procedural history above, Rogers filed a petition for a writ of habeas corpus with the court of common pleas generally alleging that the OAPA lacked the jurisdiction to extradite him and to revoke his parole, and did not allow him to present witnesses at his parole revocation hearing. (R. 16-2, Exh. 32, PageID# 373-75). The court granted Respondent's motion for summary judgment after Rogers failed to respond. (R. 16-2, Exh. 34, PageID# 518). Rogers filed an appeal with the state appellate court, which dismissed the appeal because Rogers failed to comply with the mandatory requirements of O.R.C. § 2969.25(C):

> R.C. 2969.25 sets forth specific filing requirements for inmates who file an appeal against a government employee. The appellee in this appeal is a government employee and appellant, incarcerated in the Grafton Correctional Institution, is an

inmate. R.C. 2969.2l(C) and (D). A case must be dismissed if the inmate fails to comply with the mandatory requirements of R.C. 2969.25 in the commencement of the action. *State ex rel. Graham v. Findlay Mun. Court*, 106 Ohio St.3d 63, 2005-0hio-367l, ¶ 6 ("The requirements of R.C. 2969.25 are mandatory, and failure to comply with them subjects an inmate's action to dismissal.").

Here, appellant failed to comply with R.C. 2969.25(C). Specifically, he did not pay the cost deposit, and, although he filed an affidavit of indigency, R.C. 2969.25(C) requires a motion and an affidavit that contain a statement that sets forth the balance in the inmate account of the inmate for each of the preceding six months, as certified by the institutional cashier. *See, e.g., Boles v. Knab*, 129 Ohio St.3d 222, 2011-Ohio-2859. Appellant failed to include these required documents and, therefore, he failed to comply with R.C. 2969.25(C).

Because appellant did not comply with the mandatory requirements of R.C. 2969.25, the appeal is dismissed. Costs are taxed to appellant.

(R. 16-2, Exh. 35, PageID# 524-525). On July 27, 2016, the Supreme Court of Ohio declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).[11] (R. 16-2, Exh. 38, PageID# 564).

Applying the *Maupin* test, the court finds Petitioner has procedurally defaulted his claims.

First, Petitioner failed to comply with an applicable state procedural rule, namely O.R.C. § 2969.25(C). Second, the state appellate court unequivocally enforced the state procedural

---

[11] Even though the Supreme Court of Ohio did not specify why it was denying Rogers's writ of habeas corpus or whether it agreed with the state appellate court's dismissal, habeas courts "will not assume that the [state] court did not observe the applicable procedural bar. Instead, we will assume that had the state court addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996); *accord Hayes v. Warden, Franklin Med. Ctr. Zone B*, No. 1:12-CV-740, 2013 WL 3944443, at *14 (S.D. Ohio July 31, 2013) (finding that where the Ohio Supreme Court was entirely silent as to its reasons for denying an appeal, "it must be assumed that the state court enforced the applicable procedural bar to review"), *report and recommendation adopted sub nom. Hayes v. Warden, Franklin Med. Ctr. Zone*, 2013 WL 4761140 (S.D. Ohio Sept. 4, 2013). Rogers also filed a second habeas petition directly with the Supreme Court of Ohio. That appeal was not accepted for review. *See Rogers v. Eppinger*, 2016-Ohio-5108, 146 Ohio St. 3d 1470, 54 N.E.3d 1269 (Ohio 2016). In Ohio "[r]es judicata bars petitioners from filing successive habeas corpus petitions." *Bevins v. Richard*, 2015-Ohio-2832, ¶ 4, 144 Ohio St. 3d 54, 55, 40 N.E.3d 1108, 1109 (Ohio 2015), *reconsideration denied*, 2015-Ohio-3958, ¶ 4, 143 Ohio St. 3d 1482, 38 N.E.3d 902 (Ohio 2015).

sanction by dismissing Petitioner's claims. At the third step of the analysis, the Sixth Circuit has explained that a rule is "independent and adequate" if it is "firmly established and regularly followed by the time it was applied." *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (*citing Ford v. Georgia*, 498 U.S. 411, 423-24, 112 L. Ed. 2d 935, 111 S. Ct. 850 (1991)). "Failure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds for foreclosing review." *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. Ohio Mar. 13, 2006).

The court finds that at the time of the state appellate court's decision—as well as in more recent decisions—the Ohio Supreme Court has concluded that O.R.C. § 2969.25(C)(1) mandated dismissal where the rule was not strictly followed. *See, e.g., State ex rel. Davenport v. Stat*e, 2016-Ohio-3414, ¶ 1, 146 Ohio St. 3d 255, 255, 54 N.E.3d 1248, 1248-49 (Ohio 2016) (affirming dismissal by state appellate court because the inmate "failed to provide a statement of the amount in his inmate account for each of the preceding six months, as required by R.C. 2969.25(C)(1)."); *Al'shahid v. Cook*, 2015-Ohio-2079, ¶ 10, 144 Ohio St. 3d 15, 17, 40 N.E.3d 1073, 1075 (Ohio 2015) (finding that dismissal of as habeas petition was warranted where the petitioner's cashier statement does not set forth the account balance for the month immediately preceding the petition because such failure resulted in non-compliance with O.R.C. § 2969.25(C)(1)); *State ex rel. Hawk v. Athens Cty.*, 2005-Ohio-4383, ¶ 5, 106 Ohio St. 3d 183, 106, 833 N.E.2d 296, 297 (Ohio 2005) ("The requirements of R.C. 2969.25 are mandatory, and failure to comply with them subjects an inmate's action to dismissal.") (*quoting State ex rel. Norris v. Giavasis*, 100 Ohio St.3d 371, 2003-Ohio-6609, 800 N.E.2d 365, ¶ 4 (Ohio 2003); *State ex rel. White v. Bechtel*, 2003-Ohio-2262, ¶ 5, 99 Ohio St. 3d 11, 11, 788 N.E.2d 634, 635 (Ohio 2003) (same). O.R.C. § 2969.25 is a "firmly established and regularly followed state

practice." *Boswell v. Warden, Lebanon Corr. Inst.*, No. 1:07CV702, 2008 WL 4411416, at *9 (S.D. Ohio Sept. 29, 2008) (enforcing procedural default against a habeas petitioner for non-compliance with the statute's mandatory filing requirements).

Therefore, Petitioner has procedurally defaulted his claims, and may only avoid the default if he can demonstrate both cause *and* prejudice for his default. Petitioner, however, has failed to demonstrate "cause," which requires "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. *See also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6ᵗʰ Cir. 2003). Petitioner's traverse avers that he attempted to cure his procedural default by filing a motion for reconsideration, and states his belief that a failure to follow O.R.C. § 2969.25(C) is a mere "technical deficiency" that is not an adequate and independent ground for procedural default. (R. 19, PageID# 606-607). As the cases cited above demonstrate, Petitioner is incorrect on the latter point. The state appellate court denied Petitioner's motion for reconsideration, which attempted to cure his original failure to comply with the statutory requirements, on July 18, 2016. (R. 19-2, PageID# 628). The state appellate court noted that "Appellant has now attached documents intending to comply with the filing requirements [of O.R.C. § 2969.25]. According to the Ohio Supreme Court, however, such a defect cannot be cured by later filings. *See Fuqua v. Williams*, 100 Ohio St.3d 211, 2003-Ohio-5533, ¶ 9…. Because the Supreme Court does not permit delayed compliance with R.C. 2969.25, the motion for reconsideration is denied." *Id.*

Whether the state appellate court correctly applied state law is typically beyond a habeas court's purview. Nonetheless, the state appellate court accurately cited the Ohio Supreme Court's holding in *Fuqua*, a holding that was also followed in *State ex rel. Watkins v. Andrews*, 2015-

Ohio-1100, ¶ 8, 142 Ohio St. 3d 308, 310, 29 N.E.3d 967, 968 (Ohio 2015) ("A belated attempt to amend or file a correct affidavit does not excuse noncompliance with R.C. 2969.25.") Although Petitioner would plainly like this court to find that he cured his procedural default by filing a motion for reconsideration, the court declines to do so.

To the extent Petitioner would argue that he should be excused from strict compliance with Ohio's procedural rules and that his *pro se* status should serve as cause to excuse his default, such arguments have been routinely rejected. The Sixth Circuit Court of Appeals has found that a petitioner's *pro se* status in the state court proceedings or general ignorance of the law was insufficient to establish the requisite cause to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default); *accord Sabo v. Warden*, No. 2:16-cv-536, 2017 WL 56035 at *2 (S.D. Ohio Jan. 5, 2017); *Buchanan v. Bunting*, No. 5:14-cv-01656, 2015 WL 12803743 at *10 (N.D. Ohio Sept. 8, 2015) (White, M.J.), *report and recommendation adopted*, 2016 WL 6995343 (N.D. Ohio Nov. 30, 2016) (Lioi, J.); *Tolliver v. Sheets*, 530 F. Supp. 2d 957, 981 (S.D. Ohio 2009); *Arnold v. Warden, Lebanon Correctional Inst.*, 832 F. Supp. 2d 853, 859 (S.D. Ohio 2011). Therefore, Rogers's *pro se* status or ignorance of O.R.C. § 2969.25 cannot serve as cause to excuse the procedural default of his habeas claims. Because Rogers has failed to demonstrate cause, the issue of prejudice is moot.

Rogers also cannot show that he is actually innocent, as he has not argued he did not commit the underlying crimes of which he was convicted. Moreover, he has not presented this court with any new and reliable evidence (*i.e.* exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial) that could

26

satisfy the aforementioned *Schlup* standard.

Therefore, it is recommended that the petition be dismissed as procedurally defaulted.[12]

## V. Other Matters

On July 10, 2017, Petitioner filed a motion requesting that this matter be expedited. (R. 32). On July 17, 2017, Petitioner requested a video transcript of his parole revocation hearing. (R. 33). Given the court's recommendation that the petition be dismissed as procedurally defaulted, these motions (R. 32 & 33) are hereby DENIED as moot.

On October 20, 2017, Petitioner filed a motion for stay and abeyance. (R. 37). However, Petitioner failed to set forth any grounds warranting a stay. In fact, an attachment to Petitioner's motion reveals that Petitioner filed another petition for writ of habeas corpus with the state appellate court, but that court dismissed the petition on October 10, 2017, for again failing to comply with the requirements of O.R.C. § 2969.25. Thus, the motion for a stay and abeyance (R. 37) is DENIED.

---

[12] Furthermore, because the Supreme Court of Ohio expressly struck pages 16 through 21 of Rogers's memorandum in support of jurisdiction, that Court never considered the sixth or seventh propositions of law on their merits. *See Rogers v. Eppinger*, 2016-Ohio-2956, 145 Ohio St. 3d 1467, 49 N.E.3d 1311 (Ohio 2016). Those two propositions of law are the only ones that could be construed as arguing that Rogers's parole revocation hearing failed to meet minimal due process requirements set forth in *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972). (R. 16-2, Exh. 37, PageID# 563). As discussed above, the claims revolving around Petitioner's August 2015 parole revocation hearing are the only arguments that would not constitute second or successive claims. But even if this court were to find that Petitioner's grounds for relief were not procedurally defaulted due to the state appellate court's dismissal based on Rogers's failure to comply with the requirements of O.R.C. § 2969.25(C), the only claims that could be considered by this Court without prior authorization from the Sixth Circuit are also unexhausted, as they were not properly presented to the Supreme Court of Ohio. Because Petitioner would be unable to return to the Supreme Court of Ohio to raise these claims, they are considered defaulted.

## VI.   Conclusion

For the foregoing reasons, it is recommended that Rogers's Petition be DISMISSED as procedurally defaulted.[13]

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: November 3, 2017

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[13] Because Rogers's petition has been deemed to be procedurally defaulted, the court declines to address the merits of his petition in the interests of judicial economy. Nevertheless, without deciding the matter, Petitioner's claim that he was denied due process in the course of his parole revocation appears to be of dubious merit. While the parties dispute whether Rogers kept the OAPA informed of his address after he was released from Arizona state prison, there is no reasonable dispute that Rogers was convicted of several offenses in California prior to obtaining a final release of his parole status from the State of Ohio and that these convictions violated the terms of his parole.

28